# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 4312 | **DATE** | 12/7/2001 |
| **CASE TITLE** | Thomas Jacobsen vs. J.K. Pontiac GMC Truck, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing set for 3/7/2002 at 9:00 A.M..
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion And Order. Defendant's motions to stay proceedings and compel arbitration (Doc. Nos. 3-1, 3-2, 6-1) are granted. The court accordingly stays this matter and directs the parties to enter into binding arbitration and return for a status report after the conclusion of the arbitration.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 2 number of notices | **Document Number** |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | DEC 10 2001 date docketed | 18 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | 12/7/2001 date mailed notice | |
| | Copy to judge/magistrate judge. | | | |
| ETV | courtroom deputy's initials | Date/time received in central Clerk's Office | ETV mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| THOMAS JACOBSEN, | ) | **DOCKETED** |
| Plaintiff, | ) | DEC 1 0 2001 |
| v. | ) No. 01 C 4312 | |
| J.K. PONTIAC GMC TRUCK, INC., | ) Judge | |
| Defendant. | ) Rebecca R. Pallmeyer | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Thomas Jacobsen, customer of an automobile retailer, filed this complaint against the retailer, Defendant J.K. Pontiac-GMC Truck, alleging that Defendant rejected his credit application in violation of the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691, and the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 (1998). Defendant now moves to stay the proceedings and compel arbitration according to an arbitration agreement ("the Agreement") that both parties signed at the time Plaintiff executed an automobile purchase agreement and applied for credit from Defendant.

Plaintiff argues that this court should deny Defendant's motions because the Agreement was predicated on the unfulfilled condition precedent that a third-party lender approve the car loan. Plaintiff also argues that his claims do not fall within the provisions of the Agreement, and that the Agreement is unenforceable under the Illinois Motor Vehicle Retail Installment Sales Act ("MVRISA"). Finally, Plaintiff argues that the Agreement is unenforceable for lack of consideration. For the reasons

set forth below, Defendant's motion to stay proceedings in this court and compel arbitration is granted.

## BACKGROUND[1]

On May 20, 2000, Plaintiff attempted to purchase a used 1992 Pontiac Firebird automobile from Defendant. (J.K. Pontiac Purchase Contract, Ex. A to Plaintiff's Opposition to Def's Motion to Compel Arbitration ("Pl.'s Opp'n"); Complaint ¶ 6.) In connection with that attempted purchase, Plaintiff signed several documents on that date, including a retail installment contract and two arbitration agreements.[2] (Federal Truth-In-Lending Disclosure Statement, Ex. A to Def.'s Amended Motion to Stay and Compel Arbitration ("Def.'s Amended Motion"); Agreement to Arbitrate Dispute, Ex.

---

[1] Courts treat motions to compel arbitration as assertions that they are deprived of subject matter jurisdiction during the course of arbitration. *Johnson & Bell, Ltd. v. ASA Legal Sys.*, 2000 WL 139473, at *1 (N.D. Ill. Jan. 31, 2000); *Robert Half Int'l, Inc. v. Thompson*, 1999 WL 138849, at *1 (N.D. Ill. Mar. 5, 1999) (citing *Evans v. Hudson Coal Co.*, 165 F.2d 970, 972 (3rd Cir. 1948). Accordingly, the court may consider the facts presented in the parties' pleadings, including attached exhibits. *Johnson & Bell*, 2000 WL 139473, at *1; *Robert Half Int'l*, 1999 WL 138849, at *1 (citing *Capitol Leasing Co. v. Federal Deposit Ins. Corp.*, 999 F.2d 188, 191 (7th Cir. 1993) (court may look beyond allegations to submitted evidence when deciding whether jurisdiction exists)). The court accepts uncontested facts as true. *Saylor v. Dyniewski*, 836 F.2d 341, 342 (7th Cir. 1988). Where the facts are in dispute, the court accepts Jacobsen's version. *Turnock v. Cope*, 816 F.2d 332, 333 (7th Cir. 1987).

[2] In support of its Amended Motion to Stay and Compel Arbitration, Defendant submitted two arbitration agreements between Plaintiff and Defendant dated May 20, 2000. In response to Plaintiff's contention that the arbitration agreements contradicted each other on several points, Defendant agreed in open court that it would not seek enforcement of the arbitration agreement attached to its motion as Exhibit B-1. (*See* Pl. Reply at 2, n.1.) This court, accordingly, will consider only the second Arbitration Agreement (Ex. B-2 to Amended Motion), which both parties agree is the only arbitration agreement at issue in this motion.

2

B-1 to Def's Amended Motion; Arbitration Agreement, Ex. B-2 to Def's Amended Motion.) On that date Plaintiff also signed a rider to the retail installment contract stating that the loan is "not approved until the loan company funds on the deal," and that such funding "takes anywhere from one week to one month." (J.K. Pontiac Rider, Ex. C to Pl.'s Opp'n.) It is undisputed that Defendant's third-party lender denied financing because Jacobsen was unemployed, despite his representations to the contrary on the credit application. (Def.'s Amended Motion at 1, n.1; Jacobsen Credit Application, Ex. C to Def.'s Amended Motion; 6/7/00 Memo re "Return of Deal Not Funded", Ex. D to Def.'s Amended Motion.) Therefore, Defendant cancelled the transaction approximately two to three weeks after May 20.

Nearly one year later, Plaintiff filed this suit alleging that Defendant failed to notify him in writing that his financing application had been denied in violation of the ECOA, and that by taking adverse action against him based upon information in a credit report, Defendant damaged him in violation of the FCRA. Defendant moved to stay the proceedings in this court and compel arbitration according to the Agreement.

## DISCUSSION

### A.  Standard of Review

The Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"), governs the enforcement, validity, and interpretation of arbitration clauses in commercial contracts in both state and federal courts. *Jain v. Mere*, 51 F.3d 686, 688 (7th Cir. 1995). Under the FAA, arbitration clauses are valid and enforceable agreements to be viewed with favor as a matter of federal and public policy. 9 U.S.C. § 2; *see Sweet Dreams*

*Unlimited, Inc. v. Dial-A-Mattress Int'l, Ltd.*, 1 F.3d 639, 641 (7th Cir. 1993) ("it is beyond peradventure that the Federal Arbitration Act embodies a strong federal policy in favor of arbitration"). *See also Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 280 (1995) (noting that Congress had "the needs of consumers . . . in mind" when passing the FAA, and observing that "arbitration's advantages often would seem helpful to individuals. . . complaining about a product, who need a less expensive alternative to litigation"). The statute therefore directs federal courts to stay legal proceedings when a particular dispute is found to be subject to arbitration under a contract or agreement. 9 U.S.C. § 3. In keeping with the spirit of the FAA, "[a]n order to arbitrate . . . should not be denied unless it may be said with positive assurance that the arbitration clause [in a contract or agreement] is not susceptible of an interpretation that covers the asserted dispute." *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960); *see also AT&T Tech. Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648-50 (1986).

Despite this strong presumption in favor of their validity, arbitration agreements ultimately remain a matter of the parties' intent. Nothing in the FAA limits the parties' freedom to design arbitration clauses to their own tastes and needs. Therefore, the subject matter of an arbitration clause carries its own substantive and temporal terms and limitations. *See, e.g., Bradford-Scott Data Corp. v. Physician Computer Network, Inc.*, 136 F.3d 1156, 1157 (7th Cir. 1998) (arbitration clause limited to disputes concerning payment of license or support fees); *McDonnell Douglas Fin.*

*Corp. v. Pennsylvania Power & Light Co.*, 858 F.2d 825, 831 (2nd Cir. 1988) (arbitration clause limited to tax obligations arising from indemnification under one specific paragraph of contract). In other words, the parties may properly agree to arbitrate some claims but not others. *See, e.g., Kroll v. Doctor's Assocs., Inc.*, 3 F.3d 1167, 1171 (7th Cir. 1993) (fact that parties agreed to arbitrate all disputes relating to franchise agreements but not disputes relating to real estate agreements does not undermine the mutuality of the franchise agreement's arbitration provision); *International Bhd. of Teamsters, Local Union No. 371 v. Logistics Support Group*, 999 F.2d 227, 230 (7th Cir. 1993) (duty to arbitrate remains one prescribed by contract and matters subject to arbitration should be specifically stated). No court may force a party to arbitrate a claim it has not previously agreed to arbitrate. *AT&T*, 475 U.S. at 649. Nor may a court expand the application of an arbitration clause beyond its intended scope. Instead, a court must resolve any dispute as to the arbitrability of a claim by examining whether it is of the type that the parties agreed to arbitrate. *Id.; see also International Bhd.*, 999 F.2d at 229.

To determine whether an arbitration agreement is valid, a federal court should look to the state law that governs contract formation. *Gibson v. Neighborhood Health Clinics, Inc.*, 121 F.3d 1126, 1130 (7th Cir. 1997). Illinois was the situs of all relevant events in this dispute, so the court must look to Illinois contract law principles. *Id.*

## B. Plaintiff's Claims

### 1. Condition Precedent and Scope of the Agreement

Plaintiff first argues that the arbitration agreement never came into effect because the retail installment contract contained a condition precedent to that agreement—loan approval by a third-party lender—that never occurred. To support this argument, Plaintiff points to language in the retail installment contract rider that states that "the loan is not approved until the loan company funds on the deal," and language of similar effect in the retail installment contract itself. Plaintiff argues that his case is similar to *Johnson & Bell, Ltd. v. ASA Legal Sys.*, No. 99 C 8327, 2000 WL 139473 (N.D. Ill., Jan. 31, 2000) (Conlon, J.). *Johnson & Bell* dealt with a software installation and support contract that the plaintiff purchasers had signed but the defendant sales company had not. *Id.* at \*\*4-5. The district court denied the defendant's motion to compel arbitration because the contract expressly stated that the agreement was enforceable only if signed by both parties. *Id.* at \*5. The defendant's signature essentially was a condition precedent to creating an enforceable pact. *Id.*

The court agrees with Defendant that *Johnson & Bell* is readily distinguishable from Plaintiff's case. The arbitration clause in *Johnson & Bell* was a clause within the sales and support agreement at issue in that case. Clearly, if an entire contract is rendered invalid, as it was in *Johnson & Bell*, then any single clause within the agreement is invalid as well. In Plaintiff's case, however, the parties entered into several separate agreements, including the retail installment contract and the

separately enforceable Agreement. The Agreement's separate enforceability is evidenced by its terms, which provide for binding arbitration with regard to any "Dispute," defined as "any controversy or claim arising from or relating to the vehicle [buyer has] purchased"; "claims relating to the negotiation or breach of any purchase order and/or bill of sale relating to the vehicle"; and "any question regarding whether a matter is subject to arbitration under this Arbitration Agreement."[3] (Ex. B-2 to Def.'s Amended Motion.) This language expressly contemplates situations precisely like the one Plaintiff brings before this court: claims arising out of transactions associated with vehicle purchases. The court finds this interpretation, proffered by Defendant, entirely plausible. The court concludes, further, that such an interpretation is fundamentally incompatible with Plaintiff's assertion that actual consummation of a vehicle purchase was a necessary condition to the enforceability of the Agreement.

The court is also unpersuaded by Plaintiff's argument that his claims are beyond the scope of the Agreement. The Seventh Circuit has noted that arbitration provisions incorporating the "arising from or relating to" language are extremely broad and capable of an extensive reach. *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d

---

[3] The exceptions are "a claim relating to the buyer's failure to pay an agreed upon down payment or failure to pay any amount due pursuant to a promissory note executed in lieu of a cash down payment; as to the issuance by buyer, concerning the amount remaining due on any loan concerning a trade-in vehicle; any claim relating to the possession, repossession or replevin of the vehicle; or relating to actions to enforce any Retail Installment Contract executed by [purchaser] in connection with the purchase of the vehicle." Plaintiff does not contend that his allegations fit into any of these exceptions to the Arbitration Agreement.

907, 909 (7th Cir. 1999) (citing *Tracer Research Corp. v. National Envtl. Servs. Co.*, 42 F.3d 1292, 1295 (9th Cir. 1999)). The breadth of such provisions creates a presumption of arbitrability. *Kiefer*, 174 F.3d at 910. *See also J.J. Ryan & Sons v. Rhone Poulenc Textile, S.A.*, 863 F.2d 315, 321 (4th Cir. 1988) (broad arbitration clause "does not limit arbitration to the literal interpretation or performance of the contract. It embraces every dispute between parties having a significant relationship to the contract regardless of the label attached to the dispute."). The court is unable to conclude that Plaintiff's claims–predicated on alleged omissions in responses to a car financing application–lie beyond the scope of an Agreement signed when Plaintiff tried to buy the car for which financing was sought.

### 2. Motor Vehicle Retail Installment Sales Act

Plaintiff also argues that the Agreement is unenforceable under § 12 of the Motor Vehicle Retail Installment Sales Act, 815 ILCS 375/12 ("MVRISA"). That statute, in pertinent part, says: "No provision in a retail installment contract relieving the seller from liability for any remedies provided by law which the buyer may have against the seller is enforceable." 815 ILCS 375/12. The court notes that MVRISA regulates installment sales contracts, not arbitration agreements. Plaintiff makes the conclusory argument that the Agreement "by its terms" is part of the retail installment contract that Plaintiff and Defendant executed. (Pl.'s Opp'n, at 6.) The court disagrees with Plaintiff's reading of the Agreement and, for the reasons stated above, believes that the Agreement is independent of the sale contract and separately enforceable. Because MVRISA does not apply to arbitration agreements, it does not vitiate the

Agreement in this case.

### 3. Mutuality of Obligation

Finally, Plaintiff argues that the Agreement is void for lack of consideration. Specifically, Plaintiff contends that Defendant made an illusory promise to seek arbitration because under the Agreement, Defendant is free to pursue litigation over arbitration, while Plaintiff's sole method of dispute resolution is arbitration.[4] Illinois law regarding mutuality of obligation (essentially the same as the common-law notion of consideration), requires that either both parties be bound, or neither be bound. *Carrico v. Delp*, 141 Ill. App. 3d 684, 687, 490 N.E.2d 972, 974 (4th Dist. 1986). Moreover, mutuality of obligation does not require that the promises exchanged on each side be identical or even equal. *Piehl v. Norwegian Old Peoples' Home Soc'y*, 127 Ill. App. 3d 593, 595, 469 N.E.2d 705, 706 (1st Dist. 1984).

Plaintiff cites a number of cases that he claims support his argument. In *Hull v. Norcom, Inc.*, the Eleventh Circuit refused to enforce an arbitration clause in an employment contract where both parties in one clause agreed to submit disputes to arbitration, while another clause in the same agreement grants the employer "a unilateral right to a judicial forum 'in the event of [a] breach by [employee].'" 750 F.2d 1547, 1550 (11th Cir. 1985). Plaintiff also cites *Lopez v. Plaza Finance Co.*, in which the district court held that an agreement lacked mutuality where an arbitration clause was contradicted by another clause in the same agreement that said "under no

---

[4] See footnote 3 for the list of exceptions for which the Agreement does not require arbitration.

9

conditions shall any dispute . . . [regarding] default . . . be subject to arbitration in the manner set forth herein." No. 95-C-7567, 1996 WL 210073, at *1 (N.D. Ill., Apr. 25, 1996).

The Seventh Circuit Court of Appeals recently decided a case involving facts relevant to this discussion. In *Penn v. Ryan's Family Steak Houses, Inc.*, the court considered whether an arbitration agreement is illusory if the employer "commits itself only 'to provide an arbitration forum, Rules and Procedures, and a hearing and decision based on any claim or dispute' that the employee might raise." 269 F.3d 753, 759 (7th Cir. 2001). The court held that the employer's promise in that case was illusory because the agreement did not require the employer to specify any details about the forum or set any standards with which the employer must comply. *Id.* at 759. The employer, the court noted, "could fulfill its promise by providing . . . a coin toss." *Id.*

*Hull, Lopez,* and *Penn* teach that an arbitration agreement should not be enforced if by its terms one party has made no promise to arbitrate under any conditions. This rule harmonizes well with the Illinois common law rule, suggested in *Piehl*, that the exchange of promises must be real, but they need not be equal. *See Piehl*, 127 Ill. App. 3d at 595, 469 N.E.2d at 706.

Ultimately, however, the court concludes that Defendant has bound itself by the terms of the Agreement. Although the language of the Agreement appears to favor Defendant, it does impose obligations on both parties. Defendant is clearly bound,

without exception, to submit to arbitration in areas such as claims relating to the "negotiation or breach of any purchase order and/or bill of sale relating to the vehicle, and any dispute relating to any vehicle service contract" purchased simultaneously with the vehicle or within thirty days of the vehicle purchase. (Ex. B-2 to Amended Motion.) Unlike *Hull* and *Lopez*, moreover, where conflicting contractual provisions undermined the agreements' arbitration clauses, the language of the Agreement in this case is clear, uncontradictory, and straightforward. Nor is the situation here similar to *Penn*, where an employer unsuccessfully tried to enforce an arbitration agreement as the third-party beneficiary of a contract between an employee and another company. *Penn*, 269 F.3d at 759. Accordingly, the court finds that the Agreement is supported by a mutual exchange of promises, and that the Agreement is valid.

## CONCLUSION

For the foregoing reasons, Defendant's motions to stay proceedings and compel arbitration (Doc. Nos. 3-1, 3-2, 6-1) are granted. The court accordingly stays this matter and directs the parties to enter into binding arbitration and return for a status report after the conclusion of the arbitration.

ENTER:

Dated: December 7, 2001

REBECCA R. PALLMEYER
United States District Judge